**HOPKINS et al. v. GENERAL ELECTRIC CO.**

Civ. No. 5898.

United States District Court
D. Massachusetts.

April 24, 1950.

David Scribner and Arthur Kinoy, New York City, Sidney S. Grant, Boston, Massachusetts, Seymour L. Linfield, Newark, N. J., for plaintiffs.

Charles B. Rugg, Warren F. Farr, Boston, Massachusetts, for defendant.

FORD, District Judge.

This action was originally brought by sixty employees of defendant corporation under §§ 7 and 16 of the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 207 and 216, to recover back overtime pay and liquidated damages. The case originally came before the late Judge Healey of this court, and was referred by him to a master. The master held hearings for thirty-four days, at which 3,575 pages of testimony were taken and 224 exhibits received. The action was discontinued as to three plaintiffs. The master filed his report containing his findings of fact and conclusions of law. He found that fifty-one of the plaintiffs were properly classified as exempt administrative employees during the whole period for which recovery was sought and one other (Spurr) during part of that period. As to the other plaintiffs (including Spurr for part of the period) he found that the defendant had failed to sustain the burden of showing they were exempt employees, and that they were entitled to overtime pay under § 7 of the Act. As to these same plaintiffs he also found that the defendant had not relied on any administrative regulation, order, ruling, or interpretation, practice or policy, of any agency of the United States under § 9 of the Portal-to-Portal Act of 1947, 29 U.S.C.A. § 258, but that defendant came within the provisions of § 11 of that Act, 29 U.S.C.A. § 260, in that its classification of these employees as exempt was made in good faith and with reasonable ground for believing the classification was not a violation of the Fair Labor Standards Act.

Plaintiffs move that the court adopt the findings and conclusions of the report insofar as it concerns those plaintiffs who were found entitled to recover, and that the court set aside the remaining findings and conclusions and make its own findings and conclusions on the reported evidence, or recommit the cause to the master to make new findings and conclusions.

Plaintiffs have filed seventy-nine objections to the report, which fall into three groups: objections 1–5 deal with the rate of pay of the plaintiffs; 6–78 with the nature of the work performed by them, on the basis of which the master found they were properly classified as exempt ad-

ministrative employees under § 13 of the Act, 29 U.S.C.A. § 213 [1] and the applicable rules and regulations implementing the Fair Labor Standards Act, 29 U.S.C.A.Appendix, § 541.2,[2] and 79 is to the finding that defendant acted in good faith.

■ Plaintiffs' arguments against the conclusion that they were paid on a salary basis at a rate of not less than $200 per month were grounded on the fact, as found by the master, that they were subject to the provisions of defendant's leave plan, which permitted deductions from an otherwise fixed weekly compensation in excess of $50 for disciplinary purposes and for unreasonable absences. Agency interpretation of the regulations recognized that " * * * the fact that less than this amount is paid for a particular pay period because disciplinary deductions are made for unreasonable absences would not in itself prove that the employee is not employed on a salary basis." (Release A-9, Wage and Hour and Public Contracts Division, dated August 24, 1944, "Payment on 'Salary Basis' for Executive, Administrative, and Professional Employees Clarified"). The master considered the leave policy of the defendant as set forth in its general instructions, and received evidence as to how that policy was applied in practice. He cannot be held to have been wrong in finding that under that policy plaintiffs were being paid on a salary basis under the terms of Release A-9. The evidence does not require a finding that the discretion granted to supervisors to make deductions for absence was in intent or in actual practice a discretion to go beyond the limits of deduction for unreasonable absence or for disciplinary purposes permissible under Release A-9. The master was not required to accept plaintiffs' contention that Release A-9 is inapplicable to the period before August 24, 1944. This release was not a new regulation. It did not purport to state a change in the agency's position, but as its title indicates, it was intended to make clear that position on the particular point of disciplinary deduction. This point had not been expressly covered in the previous agency explanation of the meaning of the phrase "salary basis" as used in the regulations and hence doubts had arisen as to the effect of such deductions, which were widely used only during the period of war-time production. Nothing in Release A-9 indicates any intention to treat such war-time practices differently before and after the date of the release.

In considering objections 6 through 78 it is unnecessary to undertake a detailed discussion of the master's findings as to each of the plaintiffs. In fact, plaintiffs disclaim any intention of challenging his findings as to exactly what was done by each plaintiff, particularly where this involves the master's selection from among conflicting items of evidence. Basically, plaintiffs' contention is that on the facts as found by the master, he was in error in finding that the specific work which he found was performed was done under only

1. "§ 213. *Exemptions*

(a) The provisions of sections 206 and 207 of this title shall not apply with respect to (1) any employee employed in a bona fide executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesman (as such terms are defined and delimited by regulations of the Administrator); * * *."

2. "§ 541.2 *Administrative.* The term 'employee employed in a bona fide * * * administrative * * * capacity' in section 13 (a) (1) of the act shall mean any employee—

(A) who is compensated for his services on a salary or fee basis at a rate of not less than $200 per month (exclusive of board, lodging, or other facilities) and

(2) who performs under only general supervision, responsible nonmanual office or field work, directly related to management policies or general business operations, along specialized or technical lines requiring special training, experience, or knowledge, and which requires the exercise of discretion and independent judgment; or

(3) whose work involves the execution under only general supervision of special nonmanual assignments and tasks directly related to management policies or general business operations involving the exercise of discretion and independent judgment; * * *."

general supervision, that it was responsible work related to general business operations, that it was along technical lines requiring special training, experience, or knowledge, and that it required the exercise of discretion and independent judgment.

▉ These are all findings of fact by the master, made after the hearing of lengthy and often sharply conflicting testimony. These findings will not be set aside by the court unless they are clearly erroneous. Federal Rules Civil Procedure rule 53(e) (2), 28 U.S.C.A. The master's findings in this case are clearly justified on the record, and must be accepted. Without attempting to discuss the detailed findings as to each of the fifty-one plaintiffs concerned, it will be sufficient to review the findings of the master as to the time study men and the planners, since over two-thirds of the plaintiffs fell within one or the other of these categories, and the issues raised as to these general findings are typical of those raised in each of the plaintiffs' objections 6 through 78.

▉ The work of a time study man in general was to clock the actual time used by an operator in performing the operations involved in a given job, to adjust the times thus determined by making certain allowances so as to arrive at the time required by a theoretical normal operator and thereby to determine as accurately as possible the labor cost for the job. No contention is made that this was not nonmanual work. Plaintiff contends that it cannot be found that it was performed under only general supervision because the time study man's determinations could be reviewed by his supervisor and because in the actual making of a time study the foreman exercised a large measure of authority. But the time study man's supervisor did not exercise any constant and immediate supervision over the manner in which he did his work. There is nothing to require a finding the supervision exercised was other than general. The part played by the foreman arose from the fact that the study had to be made of work done by an operator under his control, over whom the time study man had no authority. The foreman and time study man

were in different departments Neither could overrule the other It cannot be held the master was wrong in finding that the fact that the time study man had to coordinate his work with that of an independent authority, and that differences between them might eventually have to be resolved by a higher level supervisor having authority over both, did not bring the time study man under the supervision of the foreman as to the way in which he performed his task of time study.

The finding that time study work was related to general business operations is also justified. Clearly it could be found that by fixing labor costs it had a close bearing on the earnings of workers and thus on the labor relations problems of the company, and also was an important factor in the fixing of prices and thus affected the competitive position of the company in the market.

The evidence offered as to the degree of training, skill, and knowledge was conflicting. The master was in the best position to decide which witnesses' views on this point were to be accepted. He was not required to accept the statement of certain plaintiffs that their work was routine or merely clerical, work that could be learned in a week's time. It is not important that only one of the plaintiffs involved had received formal academic training in time study work, or that the practical experience background of the others was not all of the same nature. From evidence as to the nature of the work involved, from testimony offered by defendant, and from statements by some of the plaintiffs themselves. the master was justified in finding that time study work was technical work requiring special training or experience.

▉ So also he was justified in finding that the time study man's work involved discretion and independent judgment. It was not of course necessary to find that such judgment had to be exercised in every aspect of the job. Walling v. Newman et al., D.C., 61 F.Supp. 971, 978. Nor does independent judgment preclude the possibility of review of the work by a superior. Peffer, et al. v. Federal Cartridge Corp.,

D.C., 63 F.Supp. 291, 293. Plaintiffs contend that the work of evaluating the performance of the operator studied was one that required only such skill as an inspector would exercise. Again, it is the master who heard the evidence and saw the witnesses, who is in the best position to determine the extent to which such evaluations called for independent judgment, and there is nothing to show that his finding was clearly wrong. On the contrary, the evidence indicates he reached proper conclusions. Certainly the court will not upset the master's conclusions merely because the plaintiffs disagree with them.

The work of a planning man was to determine from a blue print the operations involved in a given job, then to plan the sequence of operations to be followed so as to do the job in the way which was easiest, cheapest, and quickest under all the circumstances. In some cases planning men also had to determine whether new or special tools were required, sketch such tools roughly or in detail and have them made by the proper department or procured elsewhere. The work also involved for some of the plaintiffs pricing of the job, either by comparison with similar jobs, or by estimate.

The master has found that these planners worked only under general supervision. The evidence that their work was subject to review by their supervisors, or that foremen could and occasionally did depart from planned methods when special circumstances, such as broken down machines, made it advisable, or that the engineering department was free to reject the planner's recommendations as to engineering matters, does not show the master was wrong in finding that the supervision exercised was general rather than close and immediate. Nor can it be said he was wrong in finding that this work of planning methods to be followed in carrying out the productive operations of the defendant was work of substantial importance directly related to the general business operations of the company.

The important part of the planner's task was the selection of the best sequence of operations to be followed in doing a job. This involved an evaluation of the possible methods, and of all the circumstances which would influence the choice of the method to be followed. It could be found, as the master did find, that such work required special knowledge and experience of the industrial methods involved, and that the performance of the work involved an exercise of discretion and informed judgment based on that knowledge and experience. Some of the work of the planners consisted in merely copying existing data on similar jobs taken from the files, yet even here it could be found that the determination of when such data could be profitably utilized required special experience and involved the use of independent judgment.

What I have said as to the correctness of the findings and conclusions of the master with respect to the time study men and the planners is equally applicable to the findings and conclusions concerning the other fifty-one plaintiffs the master found were exempt administrative employees.

There was ample evidence to justify the master's conclusion that defendant acted in good faith in classifying as exempt those plaintiffs whom the master has found to be nonexempt. Indeed no question has been raised as to his particular findings as to the defendant's careful methods of making and rechecking classifications of employees. It was for the master, who saw and heard the witnesses, to say whether this was an honest attempt to classify the employees properly or as plaintiffs contend, a sham proceeding to mask an arbitrary determination. Plaintiffs' claim is that the master's conclusion must be set aside in the light of testimony that most of defendant's employees receiving a salary over $200 a month were classified as exempt, that persons performing work of the same nature as that of these plaintiffs were paid less than $200 a month, and hence were nonexempt, and that some of these plaintiffs were classified as exempt when their compensation was raised to $200 a month, without any change in the character of the work. Such evidence, even if accepted by the master, does not compel a conclusion that defendant ar-

bitrarily based its classification on the salary received, disregarding other applicable factors. It is equally consistent with the conclusions (1) that defendant generally did not pay salaries of $200 a month except to employees whose work was of such a nature as to qualify them for exemption, and (2) that those whose work was of such a nature as to qualify them for exemption were not all paid $200 a month, but only those the quality of whose performance justified this figure, and hence only when and if the company decided they were worth that salary, was it able to claim them as exempt. Whatever may be the significance of such evidence, it is not such as to compel the court to set aside the master's findings and conclusions as to defendant's good faith.

The master's findings are accepted and adopted by this court. There is no error in his conclusions of law. The objections to the master's report are overruled.

Judgment in accordance with the master's report.